UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAS SOMAN,<br><br>        Plaintiff,<br><br>    v.<br><br>ALAMEDA HEALTH SYSTEM,<br><br>        Defendant. | Case No. 17-cv-06076-JD<br><br>**ORDER RE REMAND** |

In this putative class action, plaintiff Jas Soman alleges that her former employer, defendant Alameda Health System (AHS), obtained a background check into her work history using disclosure forms that violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, *et seq.*, and the California Investigative Consumer Reporting Agencies Act (ICRAA), Cal. Civ. Code §§ 1786, *et seq*. *See* Dkt. No. 42. A year and a half after the parties informed the Court that the case had settled, Soman filed a motion for preliminary approval. Dkt. Nos. 85, 96. AHS opposes the preliminary approval motion on the ground that Soman has not established Article III standing. Dkt. No. 100.

Overall, this case has not been efficiently managed by the parties. It has been burdened by long delays and other disruptions that have not been adequately explained to the Court. This is particularly true for the question of a remand. Both sides have at various times asked for a remand to state court for lack of standing, without saying why a return to state court might make sense for the class or otherwise be procedurally appropriate. *See, e.g.,* Dkt. Nos. 87, 90, 100. This has given the Court considerable pause about what the parties are doing, and resulted in several requests that they explain their positions. *See, e.g.*, Dkt. Nos. 88, 91.

After reviewing the responses that have trickled in over time, the Court now has enough to work with on the issue of a remand, and further briefing would be duplicative and unnecessary. *See Scholastic Ent., Inc. v. Fox Ent. Grp., Inc.*, 336 F.3d 982, 985 (9th Cir. 2003); *Zellmer v. Facebook, Inc.*, No. 3:18-cv-01880-JD, 2022 WL 16924098, at *1 (N.D. Cal. Nov. 14, 2022). Soman has not alleged a concrete and particularized injury that would establish standing to sue. Consequently, the case is remanded to the Alameda County Superior Court, with considerable misgivings about the potential impact on the putative class at this late date in the case.

## BACKGROUND

The relevant facts and background are discussed in detail in the Court's order dismissing the second amended complaint (SAC). *See* Dkt. No. 49 at 1-2. In pertinent part, Soman alleges that she applied for a job as a surgical technician with AHS in 2016. *Id.* at 1. She signed a job application that authorized a background check into her employment history and released AHS from liability for the investigation. *Id.*; Dkt. No. 42, Ex. A. In conjunction with the application, AHS provided Soman with written disclosure forms about the background check and her rights under the FCRA and ICRAA. Dkt. No. 49 at 1; Dkt. No. 42, Exs. B, C.

Under the FCRA, an employer cannot obtain a consumer report for employment purposes unless it makes "a clear and conspicuous disclosure" in writing before the report is obtained, in a document that consists "solely" of the disclosure, and the applicant authorizes the collection of the report. 15 U.S.C. § 1681b(b)(2)(A).

Soman says that AHS violated these requirements because its FCRA disclosure contained "extraneous and superfluous language" about accretive rights under state law. Dkt. No. 42 ¶¶ 22-24, 49, 51. She also says that the FCRA disclosure did not adequately advise her about the right "to have the person who procured the report provide a complete and accurate disclosure of the nature and scope of the investigation requested." *Id.* ¶ 62.

The Court granted multiple motions to dismiss, and provided multiple opportunities for Soman to amend the pleadings. *See* Dkt. Nos. 32, 41, 49. The FCRA claims were dismissed with prejudice. Dkt. No. 49. The order of dismissal found that the state law references in the FCRA disclosure were consistent with the legislative goals of the FCRA and not confusing, misleading,

1  or improper. *Id.* at 5.  It also found that Soman did not allege "any facts showing that she was
2  deprived of her 'ability to meaningfully authorize the credit check' or of any information or
3  privacy rights under the FCRA." *Id.* (quoting *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir.
4  2017)).  To the contrary, the alleged FCRA violations were "of a purely procedural nature that
5  could not cause genuine harm." *Id.* at 5-6.

6  Soman appealed.  Dkt. No. 51.  A few weeks later, the Ninth Circuit decided *Gilberg v.
7  Cal. Cash Checking Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019).  *Gilberg* did not address
8  standing, but it reversed summary judgment for the defendant on FCRA and ICRAA claims that
9  challenged disclosures substantively identical to the disclosures challenged by Soman.  *See id.*
10 The Court, on its own initiative, invited the parties to file a motion for relief from judgment under
11 Federal Rule of Procedure 60 in light of *Gilberg. See* Dkt. No. 53.  The Circuit remanded on that
12 basis, and the Court granted reconsideration and reopened Soman's case in October 2019.  Dkt.
13 Nos. 66, 68, 69.

14 A tortuous story of settlement and remand ensued.  On September 25, 2020, the parties
15 advised the Court that the case had settled, and they would file a joint stipulation to remand the
16 case to state court.  Dkt. No. 85.  On October 6, 2020, the parties changed course and advised that
17 they would ask the Court to consider a motion for preliminary approval of the proposed
18 settlement.  Dkt. No. 86.  A year passed, and nothing happened with respect to settlement, remand,
19 or anything else.  On October 20, 2021, Soman eventually surfaced to say that she lacked standing
20 under *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190 (2021), and that the case should be remanded
21 to state court.  Dkt. No. 87.

22 This development was a surprise given the parties' assurances that they had settled.  In
23 light of this, and the rocky state of the docket generally, the Court ordered Soman to show cause
24 why the case should not be dismissed for failure to prosecute under Federal Rule of Civil
25 Procedure 41(b).  Dkt. No. 88.  The erratic filings about settlement and remand were the main
26 concern, and the Court also noted that this was not the first time counsel for Soman and the
27 putative class, the Setareh Law Group and Haines Law Group, had dropped the ball in a class
28 action.  *Id*. at 1-2; *see also Brown v. DG Strategic VII, LLC*, No. 3:19-cv-00833-JD, Dkt. No. 70

(N.D. Cal. Oct. 27, 2021) (dismissing case under Rule 41(b) after the Setareh Law Group and Haines Law Group failed to communicate with the Court regarding a proposed settlement and missed multiple case management deadlines).

The responses to the OSC sowed even more confusion. A declaration filed by Soman's counsel wandered through a long series of communications between the parties about settlement and remand, and appeared to suggest, in vague and indirect language, that the Court should both approve the settlement and remand the case. *See* Dkt. No. 89. Counsel for AHS sailed in a "statement of non-opposition" to the motion to remand and a request that the settlement agreement be amended "to require Plaintiff to submit it to the Alameda Superior Court for preliminary and final approval in lieu of this Court." Dkt. No. 90 at 2.

Neither side made any effort to explain why their proposed courses of action were procedurally sound under Federal Rule of Civil Procedure 23 or in the best interests of the class. The Court's repeated requests for an explanation by the parties have gone entirely unsatisfied. This shortfall was not corrected at a status conference the Court held to try to cut through the opacity and confusion. *See* Dkt. Nos. 91, 94.

Soman moved for preliminary approval of the proposed $1,000,000 settlement on March 24, 2022, while the prior remand request was still pending. Dkt. No. 98-1. AHS now opposes preliminary approval on the ground that Soman has not shown that she or other putative class members suffered a concrete injury sufficient for Article III standing. Dkt. No. 100. Soman responds that she has established standing because "all of the elements necessary to establish a violation of 15 U.S.C. § 1681b(b)(2)(A) have been met," and, under *Syed*, 853 F.3d at 499, the Court can "fairly infer" that she and putative class members were confused by the disclosure form and would not have signed the authorization had it contained a proper disclosure. Dkt. No. 101 at 4. Soman withdrew the motion to remand on May 5, 2022. Dkt. No. 102.

## LEGAL STANDARDS

The "case or controversy" requirement of Article III of the United States Constitution "limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing." *Chandler v. State Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1121 (9th Cir. 2010). "[A]

4

plaintiff must demonstrate standing to sue by alleging the 'irreducible constitutional minimum' of (1) an 'injury in fact' (2) that is 'fairly traceable to the challenged conduct of the defendants' and (3) 'likely to be redressed by a favorable judicial decision.'" *Patel v. Facebook, Inc.*, 290 F. Supp. 3d 948, 952 (N.D. Cal. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). To demonstrate an injury in fact, the plaintiff must show that she has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341).

"Standing is an ongoing inquiry, and '[t]he need to satisfy these three [Article III standing] requirements persists throughout the life of the lawsuit.'" *Trump v. Twitter, Inc.*, ___ F. Supp. 3d ___, 2022 WL 1443233, at *7 (N.D. Cal. May 6, 2022) (quoting *Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016)). Here, "[a]s the party invoking the federal judicial power" in the motion for preliminary approval, Soman "has the burden of establishing the facts necessary to support standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022) (quoting *Lujan*, 504 U.S. at 561).

"The Court has an independent duty to be vigilant about standing." *Trump*, 2022 WL 1443233, at *7. Consequently, "[i]t has long been held that a judge can dismiss sua sponte for lack of jurisdiction." *Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 290 (9th Cir. 1974). That is all the more true when, as here, the "parties have previously argued the issue of jurisdiction." *Ho v. Russi*, 45 F.4th 1083, 1086 (9th Cir. 2022); *see also Zellmer*, 2022 WL 16924098, at *2.

The Ninth Circuit "has adopted a two-step framework to determine whether alleged violations of FCRA provisions are sufficiently concrete to confer standing: '(1) whether the statutory provisions at issue were established to protect [a plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations

alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Tailford*, 26 F.4th at 1099 (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)).

## DISCUSSION

As discussed, the parties have ping-ponged on remand throughout this litigation. The predominant position is that they both agree Soman lacks standing under *TransUnion*. Soman has expressly stated that this is true. *See* Dkt. No. 87 at 5 ("Plaintiff does not assert any economic or other concrete injury and rather makes a 'barebones reference to a privacy invasion' which are 'insufficient to establish Article III standing, and Plaintiff's case is merely one to vindicate procedural violations of applicable credit reporting laws.'") (citation omitted). It may be that Soman has flipflopped at times in response to the Court's concerns about the handling of the case, but the fact remains that Soman herself has agreed that she lacks standing.

The Court would be well within its discretion to remand on this basis alone. Even so, to ensure that the putative class will be fairly treated and not disadvantaged, the Court's independent analysis of standing demonstrates that a remand is appropriate.

To start, the first prong of the FCRA standing test is satisfied here. Soman alleges violations of FCRA provisions that protect "the consumer's substantive right to control who received their credit report and identify any violation of their rights of privacy and information." *Tailford*, 26 F.4th at 1100 (citing *Syed*, 853 F.3d at 499).

The salient question is whether Soman has shown that "the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id*. (internal quotation omitted). She has not done so. Soman says that she "was deprived of the opportunity to evaluate a clear disclosure of specifically what would occur with respect to her private consumer information." Dkt. No. 42 ¶¶ 56, 63. She alleges no other facts to suggest that she would have done anything differently had AHS given her a proper disclosure, that AHS used her consumer information in a way she did not expect, or that AHS even procured her information based on the faulty disclosure.

This forecloses standing under *TransUnion*. The plaintiffs alleged that TransUnion had violated the FCRA because its "mailings were formatted incorrectly and deprived them of their

right to receive information in the format required by statute." 141 S. Ct. at 2213. The Supreme Court concluded that the plaintiffs lacked standing because no class members other than the named plaintiff had "so much as *opened* the dual mailings," shown "that they were confused, distressed, or relied on the information in any way," or demonstrated that they "would have tried to correct their credit files--and thereby prevented dissemination of a misleading report--had they been sent the information in the proper format." *Id.* (internal quotation omitted) (emphasis in original). The plaintiffs also "did not allege that they failed to receive any required information. They argued only that they received it *in the wrong format*." *Id.* at 2214 (emphasis in original). The formatting violations alleged by Soman are cut from the same inadequate cloth.

Soman's citation to *Syed* does not point to a different conclusion. The plaintiff in *Syed* plausibly alleged facts from which the court could "fairly infer" that he "was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure." 853 F.3d at 499-500. Consequently, the court could infer that the plaintiff was deprived of the right to information and the right to privacy guaranteed by the FCRA, and had suffered a concrete injury sufficient for standing. *Id.*

That is not the situation here. Soman says that AHS's disclosures made it "impossible to determine whether all, some, or one of the forms constitutes the disclosures required by law," Dkt. No. 42 ¶ 24, and that this "should be sufficient for this Court to infer that Plaintiff was deprived of the right to information and the right to privacy" guaranteed by the FCRA. Dkt. No. 101 at 3. But Soman does not say that she was confused by the disclosures, or that she would not have authorized the background check had she received proper disclosures. As the Ninth Circuit has indicated in an unpublished decision, "*Syed* did not hold that a violation of FCRA's disclosure requirement alone results in a concrete injury. Instead, the court identified the concrete injury as arising 'when applicants are deprived of their ability to meaningfully authorize [a] credit check.'" *Ruiz v. Shamrock Foods Co.*, 804 F. App'x 657, 659 (9th Cir. 2020) (unpublished) (citation omitted).

*Gilberg* also does not compel a different conclusion. While that case involved FCRA claims against disclosures that were identical to the ones challenged by Soman, it did not discuss

7

standing or the plaintiff's allegations regarding injury.  *See Gilberg*, 913 F.3d at 1175-76.  The fact that the Circuit decided the case might imply that standing existed, but "[a]n assumption is not a holding."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) (internal quotation and citation omitted).  Applying *Syed* and *Gilberg*, district courts have continued to find that alleged violations of FCRA disclosure provisions are insufficient to confer standing when, as here, they are "unaccompanied by allegations that a plaintiff was confused or would have acted differently as a result of those violations."  *Nunley v. Cardinal Logistics Mgmt. Corp.*, No. ED CV 22-01255-FWS-SP, 2022 WL 5176867, at *3 (C.D. Cal. Oct. 5, 2022) (collecting cases).  Soman has not offered a good reason for the Court to reach a different conclusion here.

## CONCLUSION

Consequently, the case is remanded to the Alameda County Superior Court.  28 U.S.C. § 1447(c).  This is not a positive development for the putative class so late in the day, and it is entirely attributable to the poor performance of counsel on both sides.  Overall, the attorneys did not handle this litigation with the professionalism expected of all counsel in this District.  The record demonstrates that counsel for Soman, the Setareh and Haines law firms, have not managed this case in an acceptable manner or in the best interests of the putative class.  If this case had proceeded here, the Court would have had serious questions about their adequacy as class counsel, and their entitlement to attorneys' fees and costs.  Counsel for AHS, the Gordon Rees law firm, did not forthrightly respond to the Court's concerns about the remand and settlement issues.  Counsel for both sides appear to have engaged in gamesmanship to the detriment of the fair and efficient adjudication of this litigation.  The Court's ability to rectify this situation is over now that Soman and the putative class lack Article III standing, but it is confident that the state court will ensure the putative class is not left holding the bag for the lawyers' poor performances.

**IT IS SO ORDERED.**

Dated:  January 20, 2023

JAMES DONATO
United States District Judge

8